UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                              Case No. 07-43930-608

Josph M. Bruckman
*a/k/a* Joseph Bruckman                                       Chapter 7
*a/k/a* Jody Bruckman,
                                    Debtor.
------------------------------------------------------------x



<u>DECISION</u>



APPEARANCES:

Karamvir Dahiya                             Brian Hufnagel
Dahiya & Associates PC                      Office of the United States Trustee
325 Broadway Suite 304                      271 Cadman Plaza East
New York, NY 10007                          Suite 4529
Attorney for Debtor                         Brooklyn, NY 11201

Bruce Weiner                                Alicia M. Leonhard
Rosenberg Musso & Weiner LLP                Office of the United States Trustee
26 Court Street                             33 Whitehall Street
Suite 2211                                  21st Floor
Brooklyn, NY 11242                          New York, New York 10004
Attorney for Chapter 7 Trustee



CARLA E. CRAIG
Chief United States Bankruptcy Judge

1

This matter comes before the Court on the motion of Joseph Bruckman (the "Debtor"), to dismiss this bankruptcy case. The motion was opposed by Robert J. Musso (the "Trustee"), the chapter 7 trustee in this case, the United States Trustee (the "UST"), and American Express. Hearings were held on June 26, 2008, and June 30, 2008, during which the Court heard testimony from the Debtor, the Trustee, Jacqueline Frome, trial attorney from the UST's office, and the Debtor's former bankruptcy counsel, Kevin Zazzera.

For the following reasons, the Debtor's motion is denied.

<u>Jurisdiction</u>

This court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusion of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

<u>Facts</u>

The following facts are undisputed.

On July 24, 2007, Mr. Zazzera, on behalf of the Debtor, filed a voluntary petition under chapter 7 of the Bankruptcy Code. The petition listed the Debtor's address as 26 Richmond Valley Road, Staten Island, New York (the "Property"). Schedule A to the petition indicated that the Debtor did not own any real property, and Schedule B listed personal property valued at $613.48. The Statement of Financial Affairs stated that the Debtor did not transfer any property, other than in the ordinary course of his financial affairs, within two years preceding the bankruptcy filing, excluding payment related to debt counseling and to Mr. Zazzera. Although the Debtor disputes that he signed the petition, it appears that he signed the Statement of

Financial Affairs and declared, under penalty of perjury, that the answers contained therein were true and correct.

Schedule D listed no secured creditors, and Schedule E listed no priority creditors. Schedule E listed unsecured claims totaling $217,769.56; of which $216,674.45 constituted credit card debt. The claims register reflects that the claims against this estate total $205,966.10.[1]

On October 2, 2007, the Trustee commenced an action against the Debtor and his mother, Mae Bruckman. The Trustee alleged that the Debtor transferred the Property to Mrs. Bruckman, for little or no consideration, on July 9, 2007, approximately fifteen days before he filed for bankruptcy. The Trustee further alleged that the Property was encumbered by a mortgage in the amount of $25,000 at the time of the transfer, and that the City of New York estimated the Property's value at $567,900. The Trustee alleged that the transfer was made with actual intent to hinder, delay, or defraud creditors, or that it was made for less than reasonably equivalent value and that the Debtor was insolvent, or rendered insolvent, at the time of the transfer, and therefore seeks to avoid the transfer of the property pursuant to Bankruptcy Code §§ 544(b) and 548, and New York Debtor and Creditor Law ("DCL") §§ 273 and 276. The trustee seeks to recover the Property, or the value of the property, pursuant to Bankruptcy Code § 550, and also seeks an award of attorney's fees pursuant to DCL § 276-a.

On October 10, 2007, the UST commenced an action against the Debtor seeking to deny him a discharge pursuant to § 727(a)(2) and (a)(4).[2] The UST alleged that the Debtor transferred

---

[1] This amount includes a claim for $16,242.96 filed on March 14, 2008. The deadline for creditors to timely file proofs of claim was December 10, 2007.

[2] Unless otherwise indicated, citations to statutory provisions are to sections of the Bankruptcy Code, Title 11, U.S.C.

the Property, valued by the City of New York at $567,900, to Mrs. Bruckman with intent to hinder, delay, or defraud his creditors and the Trustee. The UST further alleged that the Debtor's Schedules reflected no interest in the Property, and that the Statement of Financial Affairs stated that he (i) made no gifts aggregating more than $200.00 within one year immediately preceding the commencement of this case, (ii) suffered no losses within one year immediately preceding the commencement of this case, and (iii) made no transfers of property within two years immediately preceding the commencement of this case. The UST alleged that the Debtor knowingly and fraudulently made a false oath or account when he signed his Schedules and Statement of Financial Affairs.

On February 2, 2008, the Debtor, by new counsel Karamvir Dahiya, filed a motion to convert this case to one under chapter 13 of the Bankruptcy Code, which was opposed by the Trustee and the UST. On June 26, 2008, Mr. Dayiha withdrew the Debtor's motion to convert the case. (Tr.[3] 6/26/08 at 6.)

On April 21, 2008, nine months after the petition was filed, the Debtor, by Mr. Dahiya, filed a motion to dismiss this case. The Trustee, the UST, and American Express opposed the motion.

Hearings on the motions were held on June 26, 2008, and June 30, 2008. At the June 30, 2008 hearing, the Court set August 15, 2008 as the deadline by which the parties may submit post-trial briefing on the matter. On August 22, 2008, the parties requested that the deadline for post-trial submissions be extended to September 19, 2008, and on September 3, 2008, the Court granted the request. The UST and the Trustee filed their post-trial briefs on September 19, 2008.

---

[3] "Tr." refers to the transcript of the hearing on the date indicated.

On September 12, 2008, the Debtor filed a letter informing the Court that Mr. Dahiya no longer represented him, and that he needed time to hire another attorney. The Debtor also requested an extension of the deadline for filing post-trial submissions. On September 26, 2008, the Court extended the Debtor's time to file a post-trial brief to October 30, 2008.

On October 29, 2009, the Debtor filed his post-trial submission setting forth arguments in support of his motion, and stating that he was unable to hire a new attorney. As of the date of this decision, no substitute attorney has appeared on the Debtor's behalf.

### Legal Standard

Section 707(a) of the Bankruptcy Code provides that a chapter 7 case may be dismissed "for cause." 11 U.S.C. § 707(a). Although the Bankruptcy Code does not define "cause," some examples are listed in § 707(a), such as "(1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees or charges required under chapter 123 of title 28; and (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521." Id. This list is illustrative and not exclusive. Schwartz v. Geltzer (In re Smith), 507 F.3d 64, 72 (2d Cir. 2007).

It is well settled that a debtor does not have the absolute right to dismiss a chapter 7 case. Id. at 72; Turpen v. Eide (In re Turpen), 244 B.R. 431, 434 (B.A.P. 8th Cir. 2000). When the debtor seeks dismissal of a chapter 7 case, a court must determine whether dismissal is in the best interest of all parties in interest, including the debtor. Smith, 507 F.3d at 72; Dinova v. Harris (In re Dinova), 212 B.R. 437, 442 (B.A.P. 2d Cir. 1997). A debtor's interest "lies generally in securing an effective fresh start upon discharge and in the reduction of administrative expenses

leaving him with resources to work out his debts." In re Schwartz, 58 B.R. 923, 925 (Bankr. S.D.N.Y. 1986). With respect to the creditors' best interests, the Court considers whether the dismissal will prejudice them. In re Stephenson, 262 B.R. 871, 874 (Bankr. W.D. Okla. 2001); Schwartz, 58 B.R. at 925. Granting a debtor's motion to dismiss a voluntary case when there is a prejudicial delay creates the appearance that such an abusive practice is implicitly condoned by the Bankruptcy Code. In re Klein, 39 B.R. 530, 533 (Bankr. E.D.N.Y. 1984). The debtor bears the burden of proving that the dismissal will not prejudice his creditors. In re Stairs, 307 B.R. 698, 703 (Bankr. D. Colo. 2004); Stephenson, 262 B.R. at 874.

Creditors "are generally not prejudiced by dismissal since they will no longer be stayed from resorting to the state courts to enforce and realize upon their claims." Schwartz, 58 B.R. at 925. However, creditors may be prejudiced "if the motion to dismiss is brought after the passage of a considerable amount of time and they have been forestalled from collecting the amounts owed to them." Id. Furthermore, "[d]ismissal of a bankruptcy petition that was filed principally to forestall creditors should not be permitted after the delay sought has been achieved." Id. "Similarly, dismissal of a case after it has appeared that the debtor failed to account honestly for his assets is not to be sanctioned, for such a failure indicates the likelihood of further questionable practices to the detriment of creditors." Id.

Discussion

The Debtor argues that the Court lacks jurisdiction over this case because he did not sign the bankruptcy petition, and because his due process rights were violated by the failure of Mr. Zazzera to comply with §§ 342, 526, 527, and 528, and by the Trustee's failure to examine the

Debtor in a meeting of creditors pursuant to § 341(a), or to provide information to the Debtor as required by § 341(d).

Jurisdiction of this Court is governed by 28 U.S.C. §§ 1334 and 157. Section 1134 of Title 28, U.S.C. provides that the district court has original and exclusive jurisdiction over bankruptcy cases, and 28 U.S.C. § 157(a) provides that a district court may refer bankruptcy cases and proceedings arising under the Bankruptcy Code to the bankruptcy court. Section 157(b)(1) of Title 28, U.S.C. provides that the bankruptcy court "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1).

The Eastern District of New York has referred all bankruptcy cases, and proceedings arising under the Bankruptcy Code, to this Court pursuant to the standing order of reference dated August 28, 1986. Therefore, this Court has jurisdiction over all cases under the Bankruptcy Code, and all core proceedings as provided in 28 U.S.C. § 157(b). The Debtor's dismissal motion arises under § 707, and is a core proceeding under 28 U.S.C. § 157(b)(2)(A), because it is a matter concerning the administration of the estate.

The Debtor's argument that the Court lacks jurisdiction because he did not sign the bankruptcy petition (Tr. 6/26/08 at 11-12) must be rejected. The Debtor's testimony that he did not sign the petition is not credible, particularly in light of his testimony that he authorized the bankruptcy filing (Tr. 6/26/08 at 32), and Mr. Zazzera's testimony that the Debtor signed the petition in his presence (Tr. 6/30/08 at 26-27). The Court also notes that the signature on the petition bears a striking resemblance to the signature appearing on the deed transferring the Property, which was admitted into evidence without objection, and to the signature on Exhibit D

to the petition, which the Debtor identified as his signature (Tr. 6/26/08 at 12).  <u>Compare</u> UST

Exhibit B at 3 and UST Ex. M <u>with</u> UST Ex. B at 4 and UST Ex. C.)  <u>See also</u> Fed. R. Evid.

901(b)(3) (trier of fact may determine authenticity of signature).

     The Debtor's argument that his case must be dismissed because of the failure of Mr.

Zazzera to comply with Bankruptcy Code  §§ 342(b), 526, 527, and 528 must also be rejected.

Section 526 provides certain restrictions on debt relief agencies.  Section 527 provides that debt

relief agencies must provide specified disclosures to an assisted person, including the written

notice required under § 342(b).  Section 528 sets forth requirements for debt relief agencies.

     A form entitled "Notice to Individual Consumer Debtor Under § 342(b) of the

Bankruptcy Code," (the "342 Notice") was admitted into evidence as UST's Exhibit L, and

contains a signature purporting to be the Debtor's signature under the declaration "I (We), the

debtor(s), affirm that I (we) have received and read this notice."  (UST Ex. L.)  Although the

Debtor denied signing the 342 Notice (Tr. 6/26/08 at 25), Mr. Zazzera testified that the Debtor

signed it in his presence (Tr. 6/30/08 at 30, 48).  The Court notes that the signature on the 342

Notice bears a clear resemblance to the signature on the deed of the Property, which was

admitted as UST's Exhibit C without objection, and to the signature on Exhibit D to the Debtor's

bankruptcy petition, which the Debtor identified as his signature (Tr. 6/26/08 at 32).  <u>Compare</u>

UST Ex. L <u>with</u> UST Ex. B at 4 and UST Ex. C.  For these reasons, this Court finds that the

Debtor's testimony that he did not sign the 342 Notice is not credible.

     However, even if the Debtor did not receive the notices required by § 342(b), and even if

Mr. Zazzera did not comply with §§ 526-528 (although there is no evidence in the record to

conclude that he did not comply with those sections), the dismissal of the case is not the

appropriate remedy for those failures. Section § 526(c)(2)(A) provides that if a debt relief agency

intentionally or negligently fails to comply with §§ 526, 527, or 528, the "debt relief agency shall

be liable to an assisted person in the amount of any fees or charges in connection with providing

bankruptcy assistance to such person that such debt relief agency has received, for actual

damages, and for reasonable attorneys' fees and costs." 11 U.S.C. § 526(c)(2). Thus, the

Bankruptcy Code expressly provides a form of relief for the failure to comply with §§ 526, 527,

and 528. On the other hand, there is no indication whatsoever in the statute or legislative history

that the failure of a debt relief agency to comply with these provisions constitutes "cause" for

dismissal of a chapter 7 case. Such an interpretation would be inconsistent with the controlling

case law, which directs courts evaluating a motion under § 707(a) to consider whether dismissal

would be in the best interests of the debtor and of creditors. Smith, 507 F.3d at 72. For these

reasons, this Court rejects the Debtor's argument that his voluntary case should be dismissed for

his attorney's alleged failures to comply with §§ 526, 527, and 528.

The Debtor also argues that his due process rights were violated, and that the case should

be dismissed, because the Trustee refused to conduct a § 341 meeting, and did not comply with

§ 341(d). Section 341(d) requires a trustee, prior to the conclusion of the § 341 meeting, to

examine a debtor to ensure that he was aware of the potential consequences of seeking a

discharge, the ability to file a petition under different chapters of the Bankruptcy Code, the effect

of a receiving a discharge, and the effect of reaffirming a debt under § 524(d).

This argument must be rejected. The Debtor did not provide any authority to support the

argument that a chapter 7 case may be dismissed based upon a trustee's (as opposed to a debtor's)

failure to comply with § 341. See E.D.N.Y. LBR 9013-1(a) (requiring a movant to specify the

rules and statutory provisions upon which the motion is based and the supporting legal authorities); In re Asia Global Crossing, Ltd., 333 B.R. 199, 205 (Bankr. S.D.N.Y. 2005) (courts should not be required to perform a party's legal research).  However, even if this were a basis for dismissal, no credible evidence was introduced to substantiate the Debtor's allegations.  The only evidence introduced in this regard was the Debtor's testimony that he appeared for the § 341 meeting, and that the Trustee called his case at the § 341 meeting, but never swore him in and "just glanced at [the Debtor] once and kept looking at [his] lawyer with a dirty look, and he was like shuffling car[d]s, but they were papers" and that the Trustee only said "'Okay.  Let's have it." (Tr. 6/26/08 at 17.)

　　　　The testimony of Mr. Zazzera and the Trustee paints a different picture of what transpired at the § 341 meeting.  Mr. Zazzera testified that he and the Debtor appeared at the § 341 meeting, but that the Debtor was concerned about his Fifth Amendment rights.  (Tr. 6/30/08 at 32.)  Mr. Zazzera further testified that "there was some discussion off the record regarding [the Debtor's] situation with the [P]roperty and the adversary proceeding," and that it was agreed that the Debtor would not testify.  (Tr. 6/30/08 at 32.)  The Trustee testified that "Mr. Zazzera approached the table where [the Trustee] was set up and told [him] that Mr. Bruckman was not going to testify at the 341 meeting."  (Tr. 6/26/08 at 75.)  The Trustee explained that he "did not conduct the meeting because there was no meeting to be conducted."  (Tr. 6/26/08 at 75.)  The Trustee testified that although he usually records § 341 meetings, he did not have a recording of the meeting because the Debtor was never sworn in to testify.  (Tr. 6/26/08 at 77.)  The Trustee further testified that the Debtor did not appear at any of the adjourned § 341 meetings, and that

he closed the meeting because he thought he would get discovery and an examination of the

Debtor through discovery in the adversary proceeding.  (Tr. 6/26/08 at 75-76.)

This Court finds that the testimony of the Debtor is not credible, gives weight to the

testimony of the Trustee and Mr. Zazzera.  It appears that the Trustee did not conduct a

§ 341 meeting because the Debtor chose not to participate.  This Court will not dismiss this case

on the Debtor's motion based on the Debtor's refusal to testify at the § 341 meeting.

The Debtor also argues that the case should be dismissed because the Trustee and UST

are conspiring together "to see to it that [he] and [his] mother have no legal representation in

these cases" by intimidating his two previous attorneys, and alleges that the UST and Trustee

altered documentary evidence in this case to deny him due process.  (Bruckman submission dated

10/28/08 at 2, 3.)  He further argues that the Trustee and UST have denied him the right to sue

the credit card companies that assert claims in this case.  (Bruckman submission dated 10/28/08

at 2.)  The Debtor further argues that the credit card companies have improperly altered the

paperwork and balances owed to them reflected therein, and that the claim of the mortgage

company is "bogus."  (Bruckman submission dated 10/28/08 at 2.)  He also argues that the

Trustee's fees and expenses in this case are "bogus," and that the Trustee threatened to increase

his fees to $40,000 at the urging of the UST.  (Bruckman letter dated 9/1/08 at 5.)

The Debtor did not provide any evidence to substantiate any of these allegations.  In the

absence of any proof of misconduct by the Trustee and the UST, the Debtor's argument is

rejected.  Furthermore, even if the Debtor believes that the creditors' claims and the Trustee's fees

and expenses are "bogus," those allegations do not constitute "cause" to dismiss this case.  Those

allegations can be addressed in the context of an objection to the creditors' claims pursuant to

Bankruptcy Rule 3007, or an objection to the Trustee's fee application pursuant to Bankruptcy Code §§ 328 and 330 and Bankruptcy Rule 2016.

The UST and the Trustee argue that dismissal will prejudice the Debtor's creditors. They also argue that voluntary dismissal is not appropriate because the Debtor has acted in bad faith, fraudulently conveyed the Property, and has no ability to pay his creditors upon dismissal. Similarly, American Express argues that dismissal of the case would delay, if not defeat, any possible recovery by creditors, and that "[i]t appears that the Debtor's sole reason for seeking dismissal of the present Chapter 7 case is to evade the avoidance of the . . . Property transfer and prevent this Court from resolving the issues alleged in the [a]dversary [p]roceedings." (Resp. of American Express at ¶ 17.)

This Court finds these arguments persuasive. It is undisputed that the Debtor transferred the Property to his mother approximately two weeks before commencing this bankruptcy case. (Tr. 6/26/08 at 27, 28- 29.) While the Debtor originally testified that he transferred the Property to his mother so that the creditors would stop calling her (Tr. 6/26/08 at 32-33), he later acknowledged that transferring the Property would have no effect on those calls and conceded that was another reason for the transfer (Tr. 6/26/08 at 34). Although he did not state what that other reason was, he acknowledged that there were pending actions against him (Tr. 6/26/08 at 42, 51) and that he was concerned about creditors getting a judgment against him (Tr. 6/26/08 at 51).

The UST introduced the transcript of the Debtor's deposition held on April 7, 2008, which was received into evidence as the UST's Exhibit G. At the deposition, the Debtor testified that he transferred the Property to his mother "because all the credit card companies were trying

to rob [him]."  (UST Ex. G at 101.)   He further testified that he thought the credit card

companies were going to "take everything from [him]."  (UST Ex. G at 107.)

Although the Debtor asserted at the evidentiary hearing that "[t]here's some financing

available" to pay his creditors, he testified that he did not know the potential investor's identity.

(Tr. 6/26/08 at 48.)  No evidence was submitted to show the Debtor's ability, or intent, to pay his

creditors upon dismissal of the case.

However, there is ample evidence to support the contentions of the Trustee and UST.

The Debtor did not disclose the transfer of the Property on the Statement of Financial Affairs,

and this failure, along with the Debtor's conduct in transferring the Property shortly before

commencing this bankruptcy case, "indicates the likelihood of further questionable practices to

the detriment of creditors."  Schwartz, 58 B.R. at 925.  This Court also notes that the Debtor did

not seek to dismiss this case until nine months after the petition was filed, and that the creditors

have been prevented from collecting amounts owed to them for this significant amount of time.

On the other hand, in the event the Trustee recovers the Property, given the Debtor's equity in the

Property, it appears that the creditors will receive a 100% distribution on their claims.

This Court is not determining, at this juncture, whether the Property was fraudulently

transferred by the Debtor to his mother.  Such a finding is not necessary in order to deny the

Debtor's motion, in light of the ample evidence weighing against dismissal.  The issue of

fraudulent transfer of the Property will be determined in the context of the pending adversary

proceeding.

Therefore, because the Debtor's conduct indicates a likelihood of further questionable practices, and because the Debtor's creditors will be prejudiced by the dismissal of this case, this Court denies the Debtor's motion.

<u>Conclusion</u>

For the foregoing reasons, the Debtor's motion to dismiss this case is denied.  A separate order will issue herewith.

Dated: Brooklyn, New York
       March 17, 2009

                                      ***s/Carla E. Craig***          
                                      CARLA E. CRAIG
                                      Chief United States Bankruptcy Judge